## Wilkins v. Hopkins.

May 9, 1939.

ROBERT HUBBARD for appellant.

FINLEY F. GIBSON, JR., for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Appellant, Richard F. Wilkins, Jr., administrator of the estate of his deceased father, Richard F. Wilkins, is appealing from a judgment rendered in his favor in the sum of $500 for damages for the death of his father. The first trial of the action resulted in a hung jury. On the second trial the jury returned a verdict for $500 on which the judgment herein appealed from was entered. The grounds urged for reversal are: (1) The amount of the recovery is grossly inadequate; and (2) the trial court admitted incompetent and prejudicial evidence.

Wilkins was struck by a car driven by the appellee, Thomas Hopkins, near the intersection of 23rd and Dumesnil Streets in Louisville, Kentucky. The accident occurred around 5 P. M., February 11, 1937, as Hopkins was driving east on Dumesnil Street. There was testimony in addition to his own that he was traveling at a speed of 20 to 25 miles an hour. According to Hopkins' version of the accident he had passed the southern intersection of 23rd and Dumesnil Streets approximately 70 feet when Wilkins stepped out into the street from between two cars parked on the south side of Dumesnil. He stated that he was only 6 to 10 feet from Wilkins when he first saw him; that he sounded his horn and applied his brakes and swerved his car to the left; that when he sounded his horn Wilkins ran toward the center of the street and into the path of his car; and that he hit Wilkins at a point just south of the center line of the street. The car stopped near the curb on the north side of the street and about 75 feet east of the southern

intersection of 23rd and Dumesnil streets. The front wheels of the car passed over Wilkins' body. Wilkins was removed from under the car, placed in it and taken to the hospital by Hopkins. He died very shortly after the accident.

According to appellant's version of the accident Hopkins was going east on Dumesnil Street at a speed of from 35 to 40 miles an hour. As Wilkins was crossing Dumesnil from south to north at the southern intersection of 23rd and Dumesnil Streets, he was struck by Hopkins' car on the north side of the center line of Dumesnil and was then carried under the car for a distance of 70 to 75 feet. There is sharp conflict in the evidence on certain points, and it is our view that a verdict in favor of either the appellee or the appellant could be supported.

The evidence complained of by the appellant was given by Officer Dodson. He was permitted to testify over the appellant's objection as to what the appellee told him relative to the place of the accident. When the officer said that he did not go to the scene of the accident until about two hours after its occurrence, the court sustained the appellant's objection to this testimony on the ground that it was not a part of the res gestæ. But even if the objection had been overruled, this evidence could only have had a bearing upon the question as to whether or not the appellee was guilty of negligence. On this point the jury found in favor of the appellant when it returned a verdict in his favor. Assuming for the sake of argument, however, that incompetent evidence was admitted, its admission became a harmless error when the jury returned a verdict for the appellant, and was therefore not prejudicial. Bender v. Louisville Railway Company, 144 Ky. 166, 137 S. W. 1034; Union Charcoal & Chemical Company v. McIntosh, 220 Ky. 74, 294 S. W. 798. See, also, Corpus Juris Secundum, Appeal and Error, Vol. 5, Section 1376, page 1021. We see, therefore, that appellant's second contention is not well grounded.

This action is the first to be brought before this court on the question of the granting of a new trial on the ground of inadequate damages under subsection 4 of Section 340 of the Civil Code of Practice as amended in 1936 (chapter 27). Section 341 of the Civil Code of Practice which was repealed in 1936 (chapter 27) provided:

"A new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation, or in any other action in which the damages equal the actual pecuniary injury sustained; nor shall more than two new trials be granted to a party upon the ground that the verdict is not sustained by the evidence."

Section 340 sets forth the grounds for the granting of a new trial. Prior to its amendment, subsection 4 of Section 340, read: "Excessive damages, appearing to have been given under the influence of passion and prejudice."

This subsection now reads: "Excessive or inadequate damages, appearing to have been given, under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court."

The case of Drury v. Franke, 247 Ky. 758, 57 S. W. (2d) 969, 88 A. L. R. 917, reviews cases in which it was held prior to 1936 that a new trial could not be granted upon the ground that the damages allowed were inadequate.

There have been numerous cases before this Court involving the question of excessive damages. In some instances verdicts have been held to be excessive, but in the great majority of cases they have not been disturbed. This Court has always been reluctant to disturb a jury verdict. In few states is the determination of damages left to the jury to the extent that it is in Kentucky. It is pointed out in McCormick on Damages (1935) Note 32, beginning on page 362, that:

"Among the few states in which the matter of damages is left to the jury generally, with no elaboration of doctrine, are Kentucky, Virginia, and West Virginia. West Kentucky Coal Company v. Shoulders' Adm'r, 1930, 234 Ky. 427, 436, 28 S. W. (2d) 479 ('this court has held repeatedly that the jury should be instructed only to the effect that the measure of damages in a death case is such sum as will reasonably compensate the estate of the decedent for the destruction of his power to earn money. * * *')."

In the case of Bessire & Co. v. Day's Adm'x, 268 Ky. 87, 103 S. W. (2d) 644, it was said that it is for the jury to determine the amount of damages by applying

their common knowledge and experience to all the facts and circumstances of the case. Numerous decisions to this effect are cited in the Bessire case.

The discretion of the trial judge, who participates in the conduct of the trial, in refusing or granting a new trial will be interfered with only in exceptional cases. As pointed out in the case of Jefferson Dry Goods Company v. Blunk, 264 Ky. 673, 95 S. W. (2d) 244, the power of the Court to grant a new trial on the ground that a verdict is excessive will be exercised with great caution and only in extreme cases. Our decisions' to the effect that a jury's award of damages can not be disturbed unless so excessive as to indicate passion, prejudice, corruption or mistake are too numerous to mention herein. As indicated this Court has always been reluctant to set aside a jury verdict for damages and direct a new trial unless the amount of the award is so disproportionate as to strike the mind at first blush as necessarily resulting from passion, prejudice, corruption or mistake in the application of the law.

The general rule as to the disturbance of a jury verdict in a personal injury action is set forth in 15 Am. Jur., Damages, Section 231, page 664. The rule is:

"As a rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evident failure of justice to the plaintiff, or where the award is so inadequate that it should not be permitted to stand. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more." There is included in 17 C. J., page 1089, the following section on inadequate damages:

"Courts are usually indisposed to increase verdicts for damages rendered by juries, for the reason that they rarely underestimate them; still such ver-

dicts are subject to the supervision of the court, and in cases where justice clearly declares that the jury failed to perform its duty, or where the amount awarded is so small that it is evident the jury must have overlooked some material element of damage, the courts have extended such relief, either by increasing the verdict or granting a new trial. The more general proceeding in such cases, however, is to set aside the verdict as being inadequate under the circumstances."

See, also, Rawle v. McIlhenny, 163 Va. 735, 177 S. E. 214, 98 A. L. R. 930.

Counsel for the appellant has cited cases from foreign jurisdictions wherein verdicts for damages in amounts ranging from five hundred dollars to several thousand dollars have been set aside because of their inadequacy. On the other hand counsel for the appellee has cited a number of foreign cases wherein verdicts for damages ranging from a few thousand dollars down to nominal sums have been left undisturbed. We do not deem it necessary, however, to enter upon a discussion of the foreign cases involving a question similar to that in the case before us. An examination of the cases cited reveals that in some instances the measure of damages was not restricted to the "permanent reduction of the decedent's power to earn money," as it is in Kentucky. Furthermore, we have noted that few jurisdictions leave the determination of damages to the jury to the extent that it is done in this state. We have indicated also our reluctance to interfere with the verdict of a jury.

Our decision as to whether a new trial should be directed because of the inadequacy of the damages awarded, as now authorized by the amendment to subsection 4 of Section 340 of the Civil Code, should be in terms of our own rulings. In other words, a verdict awarding damages complained of as being inadequate should not be disturbed unless the award is so small and disproportionate as to strike the mind at first blush as necessarily resulting from passion, prejudice, corruption or mistake. Counsel for appellant has cited a number of Kentucky cases where awards for damages running into thousands of dollars have been held not to be excessive in actions involving the loss of the decedent's power to earn money. At first thought it might appear that what has been held not to be excessive might be some indica-

tion as to what should be looked upon as inadequate; but this is not a proper approach for the determination of the adequacy or inadequacy of the damages awarded. It has been pointed out repeatedly that each case must be determined by the facts and circumstances peculiar to it, since it is impossible to lay down a general rule for the determination of the adequacy or inadequacy of damages in actions of the type before us. As indicated in the case of Swanton v. King, 72 App. Div. 578, 76 N. Y. S. 528, a comparison of the damages awarded in similar actions cannot deduce a rule to be followed in the determination of damages in personal injury actions.

The record shows that the deceased, Richard F. Wilkins, Sr., was 76 years of age at the time of his fatal injury. He had been working as a car repairer for approximately 15 years at the Louisville & Nashville Railway Shops in Louisville. He lost only a few days work during the last year of his life. He earned $5.94 per day. According to Wigglesworth's Mortality Table, his life expectancy was 7.4 years. According to the American Experience Combined Table of Expectation of Life, his expectancy was 5.88 years.

It was shown that Wilkins would have been eligible for retirement sometime during 1937 under the Federal Railway Retirement Act (45 U. S. C. A., Section 201 et seq.). It does not appear, however, that he would have been required to retire at that time. Wilkins was one of the oldest employees at the Louisville & Nashville Railway shops engaged in the work he was doing. D. F. Galloway, Jr., a witness for the appellee, testified that he was a field investigator with the Federal Railway Retirement Board, but that he was not one of its administrative officers. When the appellant's objection to a question put to Galloway as to the amount of pension payable under the Railway Retirement Act to a person who had worked under circumstances and conditions similar to those under which Wilkins had worked was sustained, the witness avowed that the amount of the pension would have been $40 per month.

The jury, having reached the conclusion that a verdict should be found in favor of the appellant, was faced with the problem of determining the amount of the verdict with the foregoing facts before it. As to what factors prompted the conclusion of the jury that an award of $500 should be made, is beyond the scope of

our inquiry. It had before it the testimony as to Wilkins' life expectancy; the amount that he had been earning; that at the time of his death, he was 76 years of age and engaged in car repair work; that he would soon have been eligible for retirement; and that he was one of the oldest employees, if not the oldest, engaged in his particular kind of work at the Louisville & Nashville shops. As indicated, the jury reached the conclusion that the amount of the damages resulting to his estate because of his death was $500. It must be borne in mind that the jury was not called upon to place a money value upon a human life, as such, which, obviously, cannot be measured in dollars and cents; but rather its duty was to fix the loss to the estate of the deceased because of the permanent reduction of his power to earn money. In other words, the question was, What was a reasonable estimate of the financial benefit that might have accrued to his estate had Wilkins lived out his natural life? While the amount awarded is small, and probably less than we would have fixed had we been sitting as the jury, we are not prepared to say that it is so grossly inadequate as to shock our conscience at first blush as being the result of passion, prejudice, corruption or mistake.

Therefore, for the reasons given herein, we are constrained to conclude that the judgment should be and it is affirmed.

Whole Court sitting.